# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY ELLEN CONDRON,** | : | **No. 3:10cv2506** |
| **Plaintiff** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **PENNSYLVANIA STATE POLICE,** | : | |
| **CAPTAIN ROBERT EVANCHICK,** | : | |
| **MAXINE JOHNSON, CORPORAL** | : | |
| **MALESKI, LINDA BONNEY,** | : | |
| **LIEUTENANT WHITTAKER, JOSEPH** | : | |
| **FOLEY, AMBER WILSON, MICHAEL** | : | |
| **MARRONE and DARBY HAND,** | : | |
| **Defendants** | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court are Defendants Captain Robert Evanchick, Corporal

Maleski, Linda Bonney, Lieutenant Whittaker, Joseph Foley, Amber

Wilson, Michael Marrone, Darby Hand and the Pennsylvania State Police's

motions to dismiss plaintiff's Amended Complaint.[1]  (Docs. 12, 13).  The

parties have briefed the issues and these motions are ripe for disposition.

---

[1] Defendant Maxine Johnson is not included in the motions to dismiss presently before the court.  Defendant Johnson is not included in the briefs in support of those motions to dismiss.  She is not included in Plaintiff Mary Ellen Condron's briefs in opposition to the motions to dismiss.  Although Defendant Johnson is mentioned in one of defendants' three reply briefs, the issue of whether her dismissal is warranted is nonetheless insufficiently briefed and not before the court.  Therefore, this Memorandum and the Order that follows will not address Plaintiff Condron's claims with respect to Defendant Maxine Johnson.

For the following reasons, defendants' motions will be granted in part and denied in part.

**Background**

Plaintiff Mary Ellen Condron (hereinafter "plaintiff") filed an Amended Complaint against Defendants Captain Robert Evanchick, Maxine Johnson, Corporal Maleski, Linda Bonney, Lieutenant Whittaker, Joseph Foley, Amber Wilson, Michael Marrone, Darby Hand and the Pennsylvania State Police (collectively "defendants") on March 8, 2011.  (See Doc. 10, Am. Compl.).  Plaintiff alleges various claims under the Americans with Disabilities Act and 42 U.S.C. § 1983.  These claims arise out of an employment dispute and encompass events spanning from 2006 to 2009.

During the time period in question, plaintiff worked for Defendant the Pennsylvania State Police (hereinafter the "PSP") as a police communications officer (hereinafter "PCO").  (Id. ¶¶ 7, 12).  Plaintiff has diabetes.  (Id. ¶ 13).  Plaintiff received positive performance reviews with no disciplinary record during the first few years of her employment.  (Id. ¶¶ 14-15).  Plaintiff went on parental leave from August 9, 2005 to February 9, 2006.  (Id. ¶¶ 15-16).

Plaintiff sought additional parental leave some time after February

24, 2006, and, although the PSP initially denied her request, she was ultimately granted three months of additional leave from March 20, 2006 to June 19, 2006.  (Id. ¶¶ 17-20).  After March 20, 2006, plaintiff alleges that Sergeant Richard Krewitz requested that petitioner submit a list of her medications.  (Id. ¶ 21).  Plaintiff suspects that Defendant Amber Wilson (hereinafter "Wilson"), who worked as a PCO at the PSP, and Defendant Joseph Foley (hereinafter "Foley"), who worked as a PCO at the PSP and served as the steward for petitioner's union, somehow encouraged Krewitz's request.  (Id. ¶¶ 10, 22).

On May 12, 2006, while plaintiff was on her extended parental leave, Defendant Corporal Maleski (hereinafter "Maleski") informed her that she must sign a release prior to returning to work.  (Id. ¶ 23).  Plaintiff alleges that Maleski hurried her, denying her the necessary time to review the document.  (Id. ¶ 24).  Plaintiff later learned that the release was for her medical records.  (Id. ¶ 25).  Plaintiff believes that Maleski deliberately misrepresented the nature of the release.  (Id. ¶ 26).  Additionally, prior to her return, Defendant Captain Robert Evanchick (hereinafter "Evanchick") ordered that plaintiff receive medical clearance to work alone at her desk.  (Id. ¶ 27).

3

Plaintiff's medical records were subsequently given to Defendants Michael Marrone (hereinafter "Marrone") and Darby Hand (hereinafter "Hand"), who are both physicians and medical directors for the PSP.  (Id. ¶¶ 11, 28).  Marrone and Hand opined that plaintiff should only work if accompanied by another PCO or some other PSP personnel during her shift.  (Id. ¶ 28).  Plaintiff contends this opinion was made at the behest of Evanchick, Maleski and "others."  (Id.)

Upon return to work on June 20, 2006, plaintiff was placed on the accommodated schedule suggested by Hand and Marrone.  (Id. ¶¶ 29-30). Defendants allegedly implemented this accommodated schedule because plaintiff's personal physician had not provided clearance for her to work alone.  (Id. ¶ 31).  Although plaintiff eventually obtained a release from her physician, plaintiff remained on the accommodated work schedule and was not returned to the "normal" scheduling status enjoyed by other PSP employees.  (Id. ¶¶ 32-33).

Plaintiff learned from a union representative that other PCOs, plaintiff suspects to be Wilson and Foley, filed grievances against her on the basis that she received preferential treatment.  (Id. ¶ 35).  In late June or early July 2006, plaintiff alleges that Wilson and Foley posted demeaning

4

cartoons portraying plaintiff as a "crybaby."  (Id. ¶ 36).  Plaintiff filed a

formal report with Sergeant Richard Krewitz alleging harassment based on

her diabetes.  (Id. ¶¶ 37-38).  An internal investigation concluded that the

cartoons were harassing, but, despite plaintiff's suspicions, there could be

no way of knowing who created them.[2]

On June 29, 2006, plaintiff filed a grievance as to why she was

placed on an accommodated schedule.  (Id. ¶ 34).  Under the

accommodated schedule, plaintiff could not work overtime and was

ineligible for shift differential pay.  (Id. ¶ 42).  A hearing was scheduled on

September 13, 2006 for plaintiff's grievance as well as the grievances filed

by other PCOs against plaintiff, but the hearing was never held.  (Id. ¶ 44).

Plaintiff received a letter dated September 26, 2006 from Evanchick stating

that her scheduling accommodation could not be continued and that her

position would be eliminated effective October 6, 2006.  (Id. ¶ 46).  The

September 26, 2006 letter gave plaintiff until October 3, 2006 to decide

---

[2] Plaintiff also pleads that she filed an additional internal informal
complaint of harassment and discrimination, but those conducting the
investigation did not pursue it further because of uncertainty over who
authored the cartoon.  (Doc. 10, Am. Compl. ¶ 40).  Plaintiff also filed a
formal complaint with the Pennsylvania Human Relations Commission.
(Id.)

whether to take a lower paying clerical position, a PCO job far away from her home, retire, resign, or attempt to go out on disability.  (Id. ¶ 47). Plaintiff met with union officials to discuss contesting the elimination of her position.  (Id. ¶¶ 48-49).  Plaintiff did not make a decision as requested in Evanchick's letter, and after a series of successive extensions in time to make a decision, plaintiff was placed on an extended period of unpaid leave.  (Id. ¶¶ 50-55).  Through these extensions and subsequent placement on unpaid leave status, plaintiff argues that defendants somehow "manipulated work rules" in a scheme to force her out of her job.[3] (Id. ¶ 55).

Plaintiff filed two grievances after being placed on unpaid leave status, the first on October 23, 2006 and the second on November 27, 2006.  (Id. ¶¶ 53, 56).  A hearing was held on January 23, 2007.[4]  (Id. ¶ 57).  In April 2007, plaintiff was placed on an indefinite leave of absence until the grievance situation was resolved.  (Id. ¶ 58).  In June 2007,

---

[3] Plaintiff's description of the alleged scheme to force her out of her job in paragraph 55 of the Amended Complaint can, at best, be described as ambiguous.

[4] The Amended Complaint does not state the outcome of the January 23, 2007 hearing, only that "defendants maintained their bogus positions at a step one hearing on January 23, 2007, and Plaintiff appealed their determination on both grievances."  (Doc. 10, Am. Compl. ¶ 57).

plaintiff alleges that her "eliminated" position was filled by someone else. (Id. ¶ 59).

On October 25, 2007, plaintiff and the PSP agreed that plaintiff could return to work with back pay and full benefits if she was cleared by an independent medical doctor who specializes in diabetes.  (Id. ¶¶ 61-62). After some initial difficulty in agreeing on a doctor, plaintiff went to Dr. Robert Gabbay of the Hershey Medical Center, who cleared her to work as a PCO on October 1, 2008.  (Id. ¶¶ 68-69).

Dr. Gabbay offered to review other medical files sent to him because plaintiff's file was incomplete.  (Id. ¶ 70).  Plaintiff alleges that Defendants Evanchick, Linda Bonney (hereinafter "Bonney") and Maxine Johnson used this offer as a pretext to threaten termination if plaintiff did not send her complete medical file to Dr. Gabbay.  (Id. at 71).  Nevertheless, plaintiff complied and was reinstated without restrictions on January 5, 2009.  (Id. ¶¶ 72-73).

Plaintiff alleges that, despite her reinstatement, some issues presented in the grievances were left unresolved, and that "her coworkers, including Wilson and Foley, continued to create an overtly and covertly hostile atmosphere, and plaintiff continued to be scrutinized excessively

7

and held to a different standard than similarly-situated employees who had not engaged in protected activities."  (Id. ¶ 74).

Plaintiff underwent surgery in June 2009 and did not return to work until September 2009.  (Id. ¶ 77).  Defendant Lieutenant Whittaker (hereinafter "Whittaker") commenced disciplinary actions against plaintiff for leave abuse.  (Id. ¶ 78).  Plaintiff maintains that she did not abuse her leave because her back leave from her two year absence was not restored. (Id.)  Plaintiff pleads that Whittaker also threatened her with a criminal investigation and demanded that she change her hours or quit her job as an emergency call center employee with Lackawanna County.  (Id. ¶¶ 80-81).  Whittaker also commenced disciplinary action against plaintiff for tardiness, allegedly at the behest of Wilson.  (Id. ¶ 79).  Furthermore, plaintiff alleges that Foley participated in precipitating Whittaker's demand that plaintiff change her hours at the Lackawanna County call center by "feeding the information to Whittaker for him to use against her."  (Id. ¶ 82).

Plaintiff was notified that a pre-disciplinary conference regarding her use of leave, tardiness and alleged conflict of interest was scheduled for December 8, 2009.  (Id. ¶ 83).  Prior to this conference plaintiff resigned. (Id. ¶ 84).  Plaintiff alleges that, as her supervisors, Maleski and Evanchick

were aware of and acquiesced in all matters relating to plaintiff's past employment disputes with the PSP.  (Id. ¶ 85).

Plaintiff filed a Complaint on December 8, 2010, (Doc. 1), and an Amended Complaint on March 8, 2011, (Doc. 10).  In her Amended Complaint, plaintiff alleges claims under the Americans with Disabilities Act as well as the Civil Rights Act, 42 U.S.C. § 1983.  Defendants Foley, Wilson, Bonney and Whittaker filed a motion to dismiss plaintiff's Amended Complaint.  (Doc. 12).  Similarly, Defendants the PSP, Evanchick, Maleski, Marrone and Hand filed a separate motion to dismiss plaintiff's Amended Complaint.  (Doc. 13).  The issues were briefed and this matter is ripe for disposition.

**Jurisdiction**

Plaintiff asserts claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., and 42 U.S.C. § 1983.  The court has jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "[t]he district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**Legal Standard**

Defendant brings this motion to dismiss pursuant to Federal Rules of

Civil Procedure 12(b)(6).[5]  When a 12(b)(6) motion is filed, the sufficiency of the allegations in the complaint are tested.  All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'"  Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)).  The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 500 U.S. 544, 556 (2007)).  Moreover, the plaintiff must allege facts that "justify moving the case beyond the pleadings to the next stage of litigation."  Id. at 234-35.  In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and

---

[5] Although both motions to dismiss claim on their face to be brought pursuant to Rule 12(b)(3) (see Docs. 12, 13), the court will nonetheless view this as a typographical error and interpret these motions as being brought under Rule 12(b)(6).  Both of the supporting briefs cite Rule 12(b)(6).  (See Docs. 14, 15).  Furthermore, Rule 12(b)(3) (improper venue) makes little sense in light of defendants' arguments.

items appearing in the record of the case." Oshiver v. Levin, Fishbein,

Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations

omitted).  The court does not have to accept legal conclusions or

unwarranted factual inferences.  See Curay-Cramer v. Ursuline Acad. of

Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v.

Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain

statement of the claim showing that the pleader is entitled to relief,'" a

standard which "does not require 'detailed factual allegations,'" but a

plaintiff must make "'a showing, rather than a blanket assertion, of

entitlement to relief' that rises 'above the speculative level.'" McTernan v.

City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Twombly, 550 U.S.

at 555-56).  The "complaint must contain sufficient factual matter, accepted

as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550

U.S. at 570).  Such "facial plausibility" exists "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id. (citing Twombly,

550 U.S. at 556).  "[T]he factual detail in a complaint [cannot be] so

undeveloped that it does not provide a defendant the type of notice of

claim which is contemplated by Rule 8." Phillips, 515 F.3d at 232 (citation

omitted).

The Supreme Court has counseled that a court examining a motion

to dismiss should, "begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth." Iqbal,

129 S. Ct. at 1950.  Next the court should make a context-specific inquiry

into the "factual allegations in [the] complaint to determine if they plausibly

suggest an entitlement to relief." Id. at 1951.

**Discussion**

Nine defendants seek dismissal from the case.[6]  Defendants attack

plaintiff's Amended Complaint on the grounds that it fails to state a claim

for which relief can be granted.  Defendants more specifically contend that

the claims in Counts I and II contain obvious defects as they are either time

barred by the statute of limitations or insufficient under the pleading

standards of the Federal Rules of Civil Procedure.  The court will examine

each count identified in the Amended Complaint to determine whether

---

[6] As is noted above, Defendants omitted Defendant Maxine Johnson from both of the motions to dismiss presently before the court.

plaintiff sufficiently states a claim for which relief can be granted.

### A.  Claims Under the Americans With Disabilities Act

In Count I of the Amended Complaint, plaintiff alleges violations of the Americans with Disabilities Act (hereinafter "ADA") generally against all defendants.  (Doc. 10, Am. Compl. ¶¶ 86-91).  In support of this claim, plaintiff lists several instances in which defendants allegedly discriminated against her because of her medical condition.  Although plaintiff is vague with respect to the specific legal theory on which her ADA claims rest, the enumerated facts essentially amount to claims of hostile work environment, disparate impact and retaliation under Title I of the ADA.  See 42 U.S.C. §§ 12111-12117.

Title I of the ADA imposes liability on covered entities for discriminating against a qualified individual with disabilities.  See 42 U.S.C. § 12112(a).  A "covered entity" is defined for the purposes of Title I of the ADA as "an employer, employment agency, labor organization, or joint labor-management committee."  42 U.S.C. § 12111(2).  It is well established that Title I of the ADA does not impose liability on individual employees as individuals are not included in the definition of covered entity.  O'Donnell v. Pa. Dep't of Corrs., 790 F. Supp. 2d 289, 308 (M.D.

Pa. 2011) (citing <u>Koslow v. Pennsylvania</u>, 302 F.3d 161, 178 (3d Cir. 2002)).

In Count I of the Amended Complaint, plaintiff appears to assert employment discrimination claims under the ADA against the PSP as her employer as well as all of the other defendants in their individual capacities.  The court will dismiss plaintiff's ADA claims against Defendants Evanchick, Maleski, Bonney, Whittaker, Foley, Wilson, Marrone and Hand as it is evident that defendants cannot be liable under the ADA in their individual capacities.

Defendants further assert that the ADA claims against the PSP should be dismissed because the PSP, as an agency of the Commonwealth of Pennsylvania, is entitled to sovereign immunity under the Eleventh Amendment.  Plaintiff does not rebut this contention in her brief in opposition, and simply states that "Plaintiff included the PSP as a defendant for her claims under the ADA under which the PSP is her employer."  (Doc. 17, Br. in Opp'n to Mot. to Dismiss at 13).  The court agrees with defendants; plaintiff's ADA claims against the PSP are barred by the Eleventh Amendment.

The Eleventh Amendment provides that "[t]he Judicial power of the

United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. AMEND XI. This prohibition of suits against states applies "to suits by citizens against their own States." Board of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 363 (2001). Eleventh Amendment sovereign immunity protects unconsenting states and state agencies, like the PSP, from suit brought in federal court. See Capogrosso v. Supreme Court of N.J., 588 F.3d 180, 185 (3d Cir. 2009). Such immunity is not absolute, but "there are only three narrowly circumscribed exceptions to Eleventh Amendment immunity: (1) abrogation by an Act of Congress, (2) waiver by state consent to suit; and (3) suits against individual state officials for prospective relief to remedy an ongoing violation of federal law." M.A. ex rel. E.S. v. State-Operated Sch. Dist., 344 F.3d 335, 345 (3d Cir. 2003) (citing MCI Telecomm. Corp. v. Bell Atl. Pa., 271 F.3d 491, 503 (3d Cir. 2001)).

Plaintiff's ADA claims against the PSP do not fall under the first exception as it is settled law that Congress did not abrogate Eleventh Amendment immunity with respect to claims arising under Title I of the

15

ADA.  See Garrett, 531 U.S. at 374; see also Banks v. Court of Common Pleas FJD, 342 F. App'x 818, 820-21 (3d Cir. 2009) ("suits seeking money damages against the state for an alleged failure to comply with Title I of the ADA are barred by the Eleventh Amendment").  In Board of Trustees of the University of Alabama v. Garrett, the Supreme Court found that the congressional record does not show that Congress intended Title I of the ADA to remedy violations of the Fourteenth Amendment.  531 U.S. at 368.  Thus, the Supreme Court held that Title I of the ADA was not within Congress's Fourteenth Amendment power; making the express abrogation provision unconstitutional and ineffective with respect to Title I claims.  See id. at 374.

Plaintiff similarly cannot maintain her ADA claims against the PSP under the second exception to Eleventh Amendment immunity because Pennsylvania has not waived its sovereign immunity with respect to claims made under Title I of the ADA.  See 42 PA. CONS. STAT. § 8521(b); Lavia v. Pa. Dep't of Corrs., 224 F.3d 190, 195-96 (3d Cir. 2000).

Finally, plaintiff does not meet the third exception, which allows for suits against individual state officials for prospective relief.  See M.A. ex rel. E.S., 344 F.3d at 345.  Plaintiff not only neglects to identify defendants

she wishes to join in an official capacity, but plaintiff also fails to specifically request any form of injunctive or prospective relief.  Therefore, the court will dismiss Count I of the Amended Complaint with respect to the PSP. As an agency of the Commonwealth of Pennsylvania, the PSP is entitled to Eleventh Amendment immunity and plaintiff's ADA claims do not fit any exception that would allow this claim to survive.

### B. Claims of Retaliation in Violation of the First Amendment

In Count II of the Amended Complaint, plaintiff alleges violations of the United States Constitution against all defendants.  (See Doc. 10, Am. Compl. ¶¶ 92-96).  She asserts the constitutional claim pursuant to the Civil Rights Act, 42 U.S.C. § 1983 (hereinafter "Section 1983").  Plaintiff essentially alleges that defendants "subjected Plaintiff to discriminatory treatment because she engaged in protected speech and activities by speaking out on matters of public concern and petitioning her government of her grievances, in violation of the First Amendment . . . ."  (Id.)

The Third Circuit has adopted a three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment.  See Hill v. City of Scranton, 411 F.3d 118, 125 (3d Cir. 2005).  First, the employee must show that his activity is protected.  Id.

17

(citing <u>Pickering v. Bd. of Educ.</u>, 391 U.S. 563 (1968)).  "Second, the

employee must show that the protected activity 'was a substantial factor in

the alleged retaliatory action.'" <u>Id.</u> (quoting <u>Mt. Healthy City Sch. Dist. Bd.</u>

<u>of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)).  "Third, the employer may

defeat the employee's claim by demonstrating that the same adverse

action would have taken place in the absence of the protected conduct."

<u>Id.</u>  Section 1983 claims are subject to a two-year statute of limitations in

Pennsylvania.[7]

Although the statute of limitations is listed as an affirmative defense

under Federal Rule of Civil Procedure 8(c), District Courts may

nonetheless dismiss claims as time barred at the motion to dismiss stage if

the plaintiff's failure to comply with the limitations period is apparent from

the face of the complaint, the exhibits attached to the complaint and

matters of public record.  <u>See</u> <u>Datto v. Harrison</u>, 664 F. Supp. 2d 472, 482

---

[7] Courts apply analogous state law limitations periods to Section 1983 claims "if it is not inconsistent with federal law or policy to do so." <u>Wilson v. Garcia</u>, 471 U.S. 261, 267 (1985).  Pennsylvania law requires that the plaintiff commence her action within two years of her injury.  <u>See</u> 42 PA. CONS. STAT. ANN. § 5524(7) (establishing a two year statute of limitations for "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct . . . .").

(E.D. Pa. 2009) (citing <u>Oshiver</u>, 38 F.3d at 1384 n.1, n.2).  With respect to applying statutes of limitations, Pennsylvania courts generally find that the statute of limitations begins to run when the plaintiff's cause of action accrues.  <u>See</u> <u>Oshiver</u>, 38 F.3d at 1385 (citing <u>Cada v. Baxter Healthcare Corp.</u>, 920 F.3d 446, 450 (7th Cir. 1990)).

In the instant case, plaintiff filed her Complaint on December 8, 2010. Defendants contend that all allegations relating to incidents occurring prior to December 8, 2008 are barred by the two year statute of limitations applied to Section 1983 claims.  Specifically, defendants assert that the claims against Defendants Foley, Wilson, Bonney, Evanchick, Maleski, Marrone and Hand are time barred by the statute of limitations.  (<u>See</u> Doc. 12, Mot. to Dismiss ¶¶ 5, 6, 10; Doc. 13, Mot. to Dismiss ¶¶ 14, 17, 20). Although plaintiff maintains that most of her claims are timely, she nonetheless asserts that the continuing violations doctrine should apply to causes of action accruing prior to December 8, 2008.

The continuing violations doctrine provides "an 'equitable exception to the timely filing requirement.'"  <u>Cowell v. Palmer Twp.</u>, 263 F.3d 286, 292 (3d Cir. 2001) (quoting <u>West v. Phila. Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir. 1995)).  Under this doctrine, "'when a defendant's conduct is part of a

continuing practice, an action is timely so long as the last act evidencing

the continuing practice falls within the limitations period; in such an

instance, the court will grant relief for the earlier related acts that would

otherwise be time barred.'" Id. (quoting Brenner v. Local 514, United Bhd.

of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).  To fit

within the doctrine, a defendant's actions must be "'more than the

occurrence of isolated or sporadic acts.'" Id. (quoting West, 45 F.3d at

755).

Courts employ three factors to determine whether the acts

complained of qualify under the continuing violations doctrine:

> (1) subject matter–whether the violations constitute the same
> type of discrimination, tending to connect them in a continuing
> violation;
> (2) frequency–whether the acts are recurring or more in the
> nature of isolated incidents; and
> (3) degree of permanence–whether the act had a degree of
> permanence which should trigger the plaintiff's awareness of
> and duty to assert his/her rights and whether the consequences
> of the act would continue even in the absence of continuing
> intent to discriminate.

Id.[8]  A plaintiff's awareness of the injury at the time it occurred is relevant to

---

[8] Under the second factor, plaintiff must establish two points.  First,
she "'must demonstrate that at least one act occurred within the filing
period: The crucial question is whether any present violation exists.  Next
the plaintiff must establish that the [alleged wrong] is more than the

whether the continuing violations theory applies, and courts have found

that the "theory does not apply when plaintiffs are aware of the injury at the

time it occurred."  Morganroth & Morganroth v. Norris, McLaughlin &

Marcus, P.C., 331 F.3d 406, 417 n.6 (3d Cir. 2003) (citing Kichline v.

Consol. Rail Corp., 800 F.2d 360 (3d Cir. 1986)).  Once a plaintiff

establishes that the doctrine applies and that one violation occurred within

the period established by the statute of limitations, a plaintiff may then

"offer evidence of, and recover for, the entire continuing violation."  West,

45 F.3d at 755.

        The court will assess the well pleaded facts in the Amended

Complaint as they relate to each defendant identified in both of the motions

to dismiss.  The Court will first address whether the claims made against

these defendants in Count II of the Amended Complaint are timely under

the applicable statute of limitations.  If these claims are timely, or if the

continuing violations doctrine should apply, then the court will examine the

facts and determine whether they support a claim for unlawful retaliation in

violation of the First Amendment.

_____

occurrence of isolated or sporadic acts.'"  Heilman v. T.W. Ponessa &
Assoc., No. 08-1667, 2009 WL 82707, at *4 (3d Cir. Jan. 14, 2009)
(quoting West, 45 F.3d at 754-55).

## I.  Defendants Joseph Foley and Amber Wilson

Plaintiff's Amended Complaint contains several allegations with respect to Defendants Joseph Foley and Amber Wilson.  Foley and Wilson were plaintiff's co-workers and fellow communications officers with the state police.  (Doc. 10, Am. Compl. ¶ 10).  Foley was the steward for plaintiff's union.  (Id. ¶ 22).  Plaintiff asserts that Wilson and Foley had a "personal animus against plaintiff."  (Id.)  Plaintiff alleges that in the year 2006, Foley and Wilson somehow convinced Sergeant Richard Krewitz to scrutinize plaintiff's medical condition.  (Id.)  Also in 2006, Foley and Wilson allegedly filed grievances against plaintiff on the basis that she received preferential treatment, and they posted demeaning cartoons of plaintiff as a "crybaby."  (Id. ¶ 35-36).  In 2009, Foley and Wilson are alleged to have created "an overtly and covertly hostile atmosphere," which resulted in plaintiff's subjugation to excessive scrutiny.  (Id. ¶ 74).  Some time after September 2009, Wilson is alleged to have fabricated attendance reports to create disciplinary problems for plaintiff.  (Id. ¶ 79).  In late 2009, Foley is alleged to have informed plaintiff's supervisor that plaintiff had a conflict with her longtime second job as a 911 operator for Lackawanna County.  (Id. ¶ 82).

Many of the allegations made against Foley and Wilson occurred well before December 8, 2008.  Plaintiff contends that all of the allegations, spanning from 2006 to 2009, are either within the limitations period or permissive under the continuing violations doctrine.  The court disagrees.

Even if it is assumed that plaintiff satisfies the first factor of the three factor test identified in Cowell, plaintiff's description of the events occurring prior to December 8, 2008 (the "crybaby" cartoon, filing grievances, informing supervisors of medical conditions and etc.) fails to satisfy the second and third factors.  With regard to the second factor, the court is not convinced that the events described are anything more than separate and sporadic incidents among coworkers that dislike each other.

With respect to the third factor, the Amended Complaint states that plaintiff was aware of any possible claims against Foley and Wilson before December 8, 2008.  This is evident through the numerous grievances plaintiff filed against her fellow PCOs, the harassment claims plaintiff initiated with the PHRC and the assistance plaintiff sought from union officials.  The continuing violations doctrine does not apply because plaintiff was aware of the injury at the time, or very near to, the time that they occurred.  See Morganroth, 331 F.3d at 417 n.6.  As plaintiff was

23

aware of the injuries within a short time of their occurrence, applying the

continuing violations doctrine here would relieve plaintiff of her duty to

promptly bring claims; this alone warrants the rejection of her continuing

violations theory. See Cowell, 263 F.3d at 295 (noting that "the continuing

violations doctrine should not provide a means for relieving plaintiffs from

their duty to exercise reasonable diligence in pursuing their claims").

Therefore, the court will only examine the sufficiency of the 2009 incidents

because all of the allegations pertaining to Wilson and Foley prior to

December 8, 2008 are barred by the statute of limitations and do not

qualify under the continuing violations doctrine.

Plaintiff alleges that after she returned from leave on January 6,

2009, Foley and Wilson created a hostile environment because she had a

pending grievance that had not been resolved. (Doc. 10, Am. Compl. ¶

74). Specifically, plaintiff alleges that Wilson fabricated attendance records

indicating that plaintiff was late to work, (Id. ¶ 79), and Foley informed

plaintiff's supervisor of a doubtful conflict with plaintiff's longtime second

job with Lackawanna County, (Id. ¶ 80, 82). Defendants contend that

these allegations fail to state a claim for retaliation in violation of the First

Amendment. While not addressing the 2009 allegations regarding Foley

and Wilson in their brief in support of their motion to dismiss, the

defendants subsequently contend in their rely brief that the alleged

retaliatory incidents are *de minimus* and insufficiently retaliatory.[9]  The

court disagrees.

The Third Circuit Court of Appeals has held that a government

employee's allegation of First Amendment retaliation is actionable even

when the alleged retaliatory act is relatively minor.  See O'Connor v. City of

Newark, 440 F.3d 125, 127-28 (3d Cir. 2006).  In fact, the Third Circuit has

found that "[e]ven 'an act of retaliation as trivial as failing to hold a birthday

party for a public employee,' if 'intended to punish her for exercising her

free speech rights,' may be actionable if under the circumstances it would

be sufficient to 'deter a person of ordinary firmness' from exercising his or

her First Amendment rights."  Id at 128 (quoting Suppan v. Dadonna, 203

F.3d 228, 234-35 (3d Cir. 2000)).  Thus the deterrence threshold for First

--------------------

[9] Defendants do not clearly state that it is their position that the
alleged retaliatory actions are *de minimus*; however, the court views
defendants arguments as an assertion that the alleged actions are *de
minimus*.  For instance, defendants characterize plaintiff's claims against
Foley and Wilson as follows: "While these alleged acts of Wilson and Foley
do not put them in the running for being awarded 'co-workers of the year
award' this Court can and should rule that they are insufficient as a matter
of law to allow the action to go forward against them."  (Doc. 19, Rely Br. in
Supp. of Defs. Foley & Wilson at 5).

Amendment retaliation claims is very low.

Aside from the already discussed statute of limitations defense, defendants only challenge the allegations against Foley and Wilson on the grounds that they are *de minimus*.  In light of the standard mentioned above, the court finds that Foley and Wilson's alleged misconduct was not *de minimus*.  Wilson's conduct of fabricating attendance records and Foley's act of passing along information to supervisors with the intent of creating a conflict with a longstanding second job meet the minimal level of deterrence needed to maintain a claim for First Amendment retaliation.

Defendants do not challenge that discovery may reveal the other elements of a First Amendment retaliation claim.  If plaintiff's allegations are taken as true, it is reasonable to infer that discovery will reveal that plaintiff was engaged in a constitutionally protected speech during the grievance process and that Foley and Wilson retaliated against her because she engaged in this protected activity.  Therefore, the motion to dismiss the claims contained in Count II against Foley and Wilson will be granted with respect to the claims arising from incidents prior to December 8, 2008.  The motion will be denied with respect to claims contained in Count II of the Amended Complaint and arising from incidents occurring

after December 8, 2008.

### ii. Defendant Linda Bonney

Defendants contend that plaintiff's allegations against Defendant Linda Bonney are barred by the two year statute of limitations.  Defendants further contend that, even if the allegations against Bonney are not time barred, they fail to state a claim under the pleading requirements of the Federal Rules of Civil Procedure.  Plaintiff does not address the issue of whether the claims against Bonney are barred by the statute of limitations, and with respect to the sufficiency of the pleadings, plaintiff maintains that they are sufficient, despite conceding that they are general in nature.

The Amended Complaint contains few allegations with respect to Bonney.  She is alleged to be a former PSP employee.  (Doc. 10, Am. Compl. ¶ 9).  Plaintiff, without reference to any dates or specific instances, alleges that Bonney, in conjunction with other PSP employees, engaged in the practice of "manipulating work rules."  (Id. ¶ 55).  Plaintiff also alleges that Bonney was involved in a November 2008 plan to terminate plaintiff if she did not provide Dr. Gabbay with medical records.  (Id. ¶ 71).

The court agrees with defendant and the claims against Defendant Bonney will be dismissed from this action.  Plaintiff alleges no specific

instances with respect to Bonney that occurred within the two year statute

of limitations.  As is discussed above, at least one event needs to be

alleged within the limitations period to invoke the continuing violations

theory.  See Ozoroski v. Maue, No. 11-2042, 2011 WL 6939090, at*1-2 (3d

Cir. Dec. 12, 2011) (citing Cowell, 263 F.3d at 292).

Even if plaintiff's claims against Bonney were not time barred, they

would nonetheless fail under Rule 8 due to their lack of specificity.  Plaintiff

concedes that the assertions against Bonney are general in nature.  (Doc.

16, Br. in Opp'n to Mot. to Dismiss at 13).  The court finds that aside from

blanket assertions regarding the "manipulation of work rules" it is unclear

what retaliatory action Bonney is alleged to have taken, if any.  Therefore,

the motion to dismiss the claims in Count II with respect to Bonney will be

granted.

### iii.  Defendant Lieutenant Whittaker

Defendants contend that Defendant Lieutenant Whittaker should be

dismissed from the case on the grounds that plaintiff has failed to state a

claim for which relief can be granted.  More specifically, defendants argue

that plaintiff has failed to state a claim against Whittaker because the

alleged retaliatory actions are *de minimus*.[10]  The court disagrees and will

deny defendants' motion on this point.

Whittaker is alleged to have been plaintiff's supervisor at the PSP

when plaintiff returned to work in September 2009, and plaintiff contends

that Whittaker contributed to creating the hostile work environment that

existed in conjunction with her pending grievance.  (Doc. 10, Am. Compl.

¶¶ 8, 74, 78).  Whittaker is specifically alleged to have initiated disciplinary

action against plaintiff in September 2009 for leave abuse, (Id. ¶ 78),

disciplined plaintiff based upon false tardiness reports, (Id. ¶ 79),

demanded that plaintiff quit her Lackawana County job or alter her hours,

(Id. ¶ 80), and suggested that plaintiff may be subject to a criminal

investigation, (Id. ¶ 81).

Initiating formal disciplinary procedures against an employee is

sufficient to meet the minimal level of deterrence needed for a public

---

[10] Again, defendants do not clearly state that it is their position that
the alleged retaliatory actions are *de minimus*.  Nevertheless, the court will
interpret defendants' argument as asserting that the retaliation alleged was
*de minimus* as the essence of defendants' argument is that the "amended
complaint fails against Whittaker because the write ups concerning her
sick leave abuse cannot be considered an 'adverse action' given that
plaintiff could have exonerated herself through the hearing procedure, but
refused to do so."  (Doc. 14, Br. in Supp. of Mot. to Dismiss at 12).

employee to maintain a First Amendment retaliation.  See O'Connor, 440

F.3d at 128 (noting that the First Amendment retaliation claim survives

even if the act of retaliation is trivial, such as failing to hold a birthday

party).  Whittaker's initiation of formal disciplinary charges, coupled with his

threat (as a Lieutenant in the Pennsylvania State Police) of a criminal

investigation, certainly meets the minimal level of deterrence needed to

maintain a First Amendment retaliation claim.

Similar to their argument with respect to Defendants Foley and

Wilson, defendants do not challenge that the allegations against Whittaker,

if true, otherwise raise a reasonable expectation that discovery will reveal

evidence pertaining to the other elements of a First Amendment retaliation

claim.  For instance, defendants do not contest that it is otherwise

reasonable to infer that discovery will reveal that plaintiff was engaged in a

constitutionally protected speech during the grievance process and that

Whittaker initiated disciplinary action and threatened a criminal

investigation because of that speech.  Therefore, the motion to dismiss the

claims contained in Count II against Whittaker will be denied.

### iv.  Defendants Michael Marrone and Darby Hand

Defendants assert that Defendants Hand and Marrone should be

dismissed from this action as the claims made against them are barred by the two year statute of limitations.  Hand and Marrone are only mentioned in two paragraphs of the Amended Complaint.  They are first identified as physicians and the medical directors of the PSP.  (Doc. 10, Am. Compl. ¶ 11).  It is later alleged that Hand and Marrone received plaintiff's medical records sometime during the summer of 2006 and then, "at the urging of the PSP (Evanchik, Maleski, and others), and despite their duty to exercise their own independent judgment, rendered opinions that plaintiff could only return to work under the restriction of having another PCO or other PSP personnel on her shift with her full time."  (Id. ¶ 28).

Plaintiff admits that the claims relating to Hand and Marrone only relate to events occurring in 2006.  (Doc. 17, Br. in Opp'n to Mot. to Dismiss at 11).  Plaintiff nonetheless contends that Hand and Marrone are liable under the continuing violations doctrine.  Plaintiff supports her continuing violations doctrine argument as follows:

> "in the context of the rest of her claims, and the relationship of the medical matters to those claims, plaintiff believes that her claims against these defendants, the wrongfulness of which was only revealed and discovered over time, and not determinable at this point in any case, are sufficiently alleged. Clearly, the actions and conduct of Marrone and hand [sic] were part of the overall pattern of work rule manipulations that have caused plaintiff the injuries of which she complains."

31

(Id.)

The court disagrees.  It is apparent from the face of the Amended

Complaint that all of the alleged incidents involving Hand and Marrone

occurred in 2006, well outside of the two year limitations period.  Although

plaintiff alleges that Marrone and Hand's conduct was a part of a wider

pattern of "work rule manipulations," plaintiff does not allege that Marrone

or Hand behaved unlawfully at any point within the limitations period.

Neglecting to plead that the defendant engaged in unlawful activity within

the limitations period is, in itself, a fatal defect in a continuing violations

theory claim.  See Ozoroski, 2011 WL 6939090, at *1-2 (citing Cowell, 263

F.3d at 292).  Additionally, the Amended Complaint is devoid of any

indication that Hand and Marrone's involvement in plaintiff's employment

dispute was anything other than isolated.  Furthermore, plaintiff was aware,

or should have been aware, of Hand and Marrone's actions in 2006.

Although plaintiff contends that their wrongfulness was revealed over time,

plaintiff nonetheless establishes that she was aware of the alleged injury

that Hand and Marrone caused immediately upon her return to work on

June 20, 2006.  Plaintiff challenged the accommodated work schedule with

her supervisors both informally and with formal grievances.  Thus, plaintiff

was aware of the alleged injury and her right to seek recourse long before she filed suit.

Therefore, the court will dismiss the claims contained in Count II with respect to Hand and Marrone.  Plaintiff's logic is opaque and her argument regarding the continuing violations doctrine is far from compelling.  The cause of action against these defendants began to run in 2006, and to hold otherwise would offend the policy rationale of statutes of limitations.  See Cowell, 263 F.3d at 295.

### v.  Defendants Captain Robert Evanchick and Corporal Maleski

Defendants contend that plaintiff's allegations against Defendants Captain Robert Evanchick and Corporal Maleski are time barred by the two year statute of limitations.  Defendants maintain that even if plaintiff's claims are not time barred plaintiff has failed to state a claim for which relief can be granted with respect to Evanchick and Maleski.

In the Amended Complaint, plaintiff alleges that Evanchick and Maleski were plaintiff's supervisors in the chain of command.  (Doc. 10, Am. Compl. ¶ 8).  Both Evanchick and Maleski were involved in the incident regarding the medical release plaintiff was required to sign upon returning to work in June 2006, and they were involved in a supervisory

capacity in placing plaintiff on an accommodated work schedule. (Id. ¶¶ 23-29). During the fall of 2006, Evanchick sent plaintiff several letters stating that she must decide to either resign, retire, transfer to another post, or go on disability. (Id. ¶¶ 46-52). Both Evanchick and Maleski, similar to other PSP employees, are vaguely alleged to have manipulated work rules. (Id. at ¶ 55). Finally, plaintiff alleges that Evanchick and Maleski were supervisors in the chain of command and that they knew of and acquiesced in the unconstitutional conduct of their subordinates. (Id. ¶ 85).

Contrary to plaintiff's contention that the claims against Evanchick and Maleski are timely, the court finds that all of the allegations made against Evanchick and Maleski occurred outside of the two year statute of limitations, with the exception of the allegations that they acquiesced in Whittaker, Foley and Wilson's allegedly unconstitutional conduct.[11]

_____

[11] Although there is no date associated with the allegation that Evanchick and Maleski, in conjunction with Defendants Bonney and Johnson, somehow "manipulated work rules," the court nonetheless notes that this allegation is nestled in the Amended Complaint between allegations involving a November 17, 2006 letter and a November 27, 2006 grievance. (Doc. 10, Am. Compl. ¶¶ 54-56). Regardless of whether the alleged manipulation of work rules occurred in 2006, as the court suspects, or at another time, such a vague allegation is nothing more than a blanket assertion of wrongdoing. Such claims in themselves are not enough to

Although plaintiff does not specifically argue in her brief that the continuing violations doctrine should apply, the court nonetheless notes its inapplicability.  Plaintiff's allegations against Maleski and Evanchick involving their role in her initial accommodation from 2006-07 and their role as supervisors in her disciplinary proceedings in 2009 amount to separate events that do not qualify under the continuing violations doctrine.  See Cowell, 263 F.3d at 292.

The court further notes that plaintiff was aware of any alleged injury caused by Evanchick and Maleski and that she was not diligent in bringing her claims.  In 2006 and 2007, Plaintiff filed numerous grievances and took formal action in protest of being placed on an accommodated schedule.  Plaintiff also reached an agreement with the PSP and her supervisors that allowed her to return to work in January 2009.  Thus, applying the continuing violations doctrine would offend the policy underpinnings of the statute of limitations.  See id. at 295.  Therefore, the only claim against

---

meet the pleading requirements of the Federal Rules of Civil Procedure. See McTernan, 564 F.3d at 646 (citing Twomby, 550 U.S. at 555-56). Thus, the court will not consider the allegations contained in paragraph 55 of the Amended Complaint when determining the plausibility of the claims against Evanchick, Maleski or any other defendant who may be implicated by such a broad indictment.  See Curay-Cramer, 450 F.3d at 133 (noting that the court need not accept unwarranted factual inferences).

Maleski and Evanchick that is not time barred is that they supervised and

approved of Whittaker, Foley and Wilson's allegedly unconstitutional

conduct in 2009.

Defendants do not address this specific claim as it relates to

plaintiff's First Amendment retaliation claim in either the brief in support of

the motion to dismiss or their reply brief.  Defendants focus their failure to

state a claim argument on the allegations involving Maleski and Evanchick

that allegedly occurred prior to December 8, 2008.  Plaintiff contends that

Evanchick and Maleski can be liable under Section 1983 as supervisors if

they acquiesced to their subordinates committing a constitutional violation.

The court agrees with plaintiff.  The First Amendment retaliation claims

against Evanchick and Maleski with respect to their acquiescence of

Whittaker, Foley and Wilson's alleged constitutional violations will not be

dismissed.

When it comes to supervisor liability in Section 1983 cases, it is well

established that *respondeat superior* is not a viable theory.  See Monell v.

Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Rather the Supreme Court

has held that supervisor liability can only be imposed in Section 1983

claims if that supervisor played an "affirmative part" in the complained-of

36

misconduct.  Iqbal, 129 S. Ct. at 1949 ("In a § 1983 suit or a Bivens action–where masters do not answer for the torts of their servants–the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").  To set forth an action for supervisory liability under Section 1983, a "plaintiff must demonstrate that the supervising officials: (1) personally participated in violating a person's rights; (2) directed others to violate a person's rights; or (3) had knowledge of and acquiesced in a subordinate's violation of a person's rights."  Simonton v. Tennis, 437 F. App'x 60, 64 (3d Cir. 2011) (citing Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997), *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 76-78 (2006)).

In this case, plaintiff alleges that Evanchick and Maleski, as supervisors, knew of and acquiesced to the constitutional violations of their subordinates.  This includes Whittaker, Foley, and Wilson's activities in 2009, which, as is discussed above, may prove through discovery to be constitutional violations.  Therefore, if plaintiff's factual allegations pertaining to Maleski and Evanchick are accepted as true, they state a claim that is plausible on its face.  Thus, the court will not dismiss the claim

37

of supervisor liability against Evanchick and Maleski with regard to their acquiescence and knowledge of Whittaker, Foley and Wilson's alleged constitutional violations, but the court will dismiss the other allegations made against Evanchick and Maleski as untimely.

### vi.  Defendant the Pennsylvania State Police

Although plaintiff alleges Section 1983 claims against all defendants in her Amended Complaint, she later clarified that "[t]he PSP is not included as a defendant for [sic] purposes of her Section § [sic] 1983 claims."  (Doc. 17, Br. in Opp'n to Mot. to Dismiss at 13).  The court will treat this response as a withdrawal of the Section 1983 claims against the PSP, and the court will dismiss the claims in Count II of the Amended Complaint with respect to the PSP.

**Conclusion**

For the above-stated reasons, both of defendants' motions to dismiss will be granted in part and denied in part.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARY ELLEN CONDRON, | : | No. 3:10cv2506 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| CAPTAIN ROBERT EVANCHICK, | : | |
| MAXINE JOHNSON, CORPORAL | : | |
| MALESKI, LINDA BONNEY, | : | |
| LIEUTENANT WHITTAKER, JOSEPH | : | |
| FOLEY, AMBER WILSON, MICHAEL | : | |
| MARRONE and DARBY HAND, | : | |
| Defendants | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 30th day of January 2012, it is hereby
**ORDERED**:

1.  Defendants Joseph Foley, Amber Wilson, Linda Bonney and Lieutenant Whittaker's motion to dismiss (Doc. 12) is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.  The motion is **GRANTED** with respect to plaintiff's claims against Linda Bonney.  The Clerk of the Court is directed to dismiss Linda Bonney from this case;

   b.  The motion is **GRANTED** with respect to plaintiff's claims in Count I of the Amended Complaint against Joseph Foley, Amber Wilson and Lieutenant Whittaker;

   b.  The motion is **GRANTED** with respect to plaintiff's claims in Count II of the Amended Complaint against Joseph Foley and

Amber Wilson, but only to the extent that those claims arise from incidents predating December 8, 2008;

c.  The motion is **DENIED** in all other respects.

2.  Defendants the Pennsylvania State Police, Michael Marrone, Darby Hand, Captain Robert Evanchick and Corporal Maleski's motion to dismiss (Doc. 13) is **GRANTED IN PART** and **DENIED IN PART** as follows:

a.  The motion is **GRANTED** with respect to plaintiff's claims against the Pennsylvania State Police, Michael Marrone and Darby Hand.  The Clerk of the Court is directed to dismiss the Pennsylvania State Police, Michael Marrone and Darby Hand from this case;

b.  The motion is **GRANTED** with respect to plaintiff's claims in Count I of the Amended Complaint against Captain Robert Evanchick and Corporal Maleski;

c.  The motion is **GRANTED** with respect to plaintiff's claims in Count II of the Amended Complaint against Captain Robert Evanchick and Corporal Maleski, but only to the extent that those claims arise from incidents predating December 8, 2008;

d.  The motion is **DENIED** in all other respects.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**

40