# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ELLEN CONDRON, | : | No. 3:10cv2506 |
|     Plaintiff | : | |
| | : | (Judge Munley) |
|     v. | : | |
| | : | |
| CAPTAIN ROBERT EVANCHICK, | : | |
| MAXINE JOHNSON, LIEUTENANT | : | |
| WHITTAKER, JOSEPH FOLEY and | : | |
| AMBER WILSON, | : | |
|     Defendants | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MEMORANDUM

Before the court is defendants' motion for summary judgment. (Doc. 37). This motion is fully briefed and ripe for disposition.

## BACKGROUND

This civil rights lawsuit arises out of Mary Ellen Condron's ("Condron") employment dispute with the Pennsylvania State Police ("PSP"). Condron contends that Defendants Captain Robert Evanchick ("Evanchick"), Lieutenant Whittaker ("Whittaker"), Joseph Foley ("Foley") and Amber Wilson ("Wilson") (collectively "defendants") retaliated against her in violation of the First Amendment after she engaged in protected speech by filing grievances.

The undisputed material facts as presented by both parties are as follows:

Condron is a former PSP Police Communications Operator ("PCO"). (Doc. 38, Defs.' Statement of Material Facts (hereinafter "SOF") ¶¶ 1-2). Condron worked as a PCO at the Dunmore Barracks from April 2003 until December 24, 2009. (Id. ¶¶ 2, 35). Foley, Wilson, Evanchick and Whittaker worked with Condron at the Dunmore Barracks. (Id. ¶¶ 3-4, 18). Foley and Wilson were PCOs and Evanchick and Whittaker were supervisors. (Id.)

Condron utilized accumulated sick time and family and medical leave from early 2005 until February 7, 2006 to give birth and care for her child. (Id. ¶ 5). Condron returned to work for approximately six weeks before receiving an additional three months of family and medical leave. (Id. ¶ 6; Doc. 39-1, Ex. A, Dep. of Condron ("Condron Dep.") at 38-40).

Upon her return to work on June 12, 2006, PSP unilaterally placed Condron on an accommodated work schedule because she was diabetic. (SOF ¶ 7). Under the accommodated schedule, Condron could not work overtime and was ineligible for shift differential pay. (Id.; Condron Dep. at 82-83). On June 29, 2006, Condron challenged her accommodation by filing a grievance. (SOF ¶ 9). Specifically, Condron "wanted to be back on the [shift] rotation the way it should have been when [she] came back

to work [and to be] relieved from this accommodation that they forced me to work these shifts." (Condron Dep. at 83).

In October 2006, the PSP notified Condron that they could no longer provide the accommodated work schedule. (SOF ¶ 12). The PSP advised Condron that she could resign, retire, or take a demotion. (Id. ¶ 13). Condron declined these options, which resulted in the PSP placing Condron on an involuntary temporary leave of absence. (Id. ¶ 14). As a result of being placed on administrative leave, Condron filed a second grievance. (Id. ¶ 15).

The parties signed a settlement agreement on October 31, 2007. (Condron Dep., Ex. 9, Oct. 25, 2007 settlement letter at 1-2). The settlement agreement provided that Condron would undergo an independent medical examination by an agreed upon medical provider. (Id.) If the medical examiner determined Condron could perform her duties without restriction, Condron would return to work. (Id.)

A year passed before the parties agreed on an independent medical examiner. On October 15, 2008, Dr. Robert Gabbay of the Hershey Medical Center examined Condron and determined she was medically cleared to go back to work without any restrictions. (Condron Dep at 66-

3

72).  As such, Condron returned to work as a PCO at the Dunmore Barracks on January 5, 2009.  (SOF ¶ 17).

Condron worked from January 2009 until June 2009.  (Id. ¶ 19).  On June 9, 2009, Condron took a leave of absence to undergo a medical procedure.  (Id.; Condron Dep. at 93).  Condron returned to work on September 11, 2009.  (SOF ¶ 20).

Subsequent to returning to work in September 2009, Condron received a letter from Kim Studenroth, Director PSP Human Resources.  Studenroth stated that Condron's absences beginning July 14, 2009 could not be approved because Condron did not meet the eligibility requirement for unpaid leave.  (Doc. 39-6, Ex. F, Studenroth letter dated Sept. 15, 2009).  Specifically, Condron had not worked 1250 hours in the past year to qualify for leave pursuant to the Family and Medical Leave Act.  (Id.)  Additionally, Studenroth advised Condron that she was overpaid 232 hours over 29 days between July 14, 2009 and August 21, 2009. (Id.)  Therefore, the PSP would begin garnishing Condron's wages to recoup the overpayment.  (Id.)

On October 20, 2009, Sergeant Craig Carey notified Condron that she was being placed on sick leave use restriction.  (SOF ¶ 22).  Condron

4

was placed on sick leave use restriction because she had exhausted all of her sick leave entitlement but was still requesting and using sick leave time. (Id. ¶ 23). Condron's union representative filed a grievance on her behalf alleging that Condron was granted approved sick leave only to have it taken away. (Condron Dep., Ex. 4, Grievance dated Oct. 22, 2009). Simultaneous with the dispute over Condron's sick leave usage, Whittaker investigated a complaint that Condron had secondary employment with the Lackawanna County 911 call center in violation of PSP policies. (SOF ¶ 28; Doc. 39-5, Ex. E, Dep. of Whittaker ("Whittaker Dep.") at 23-24).

Soon thereafter, Whittaker was tasked with holding a pre-disciplinary conference ("PDC") with Condron on December 9, 2009. (SOF ¶¶ 24-25). The PDC addressed two issues: (1) Condron's alleged violation of PSP's supplemental employment policies; and (2) Condron's alleged violation of sick leave restriction. (Whittaker Dep. at 47, 71). Whittaker, Condron and a union representative attended the PDC on December 9, 2009. (SOF ¶¶ 32-33; Doc. 39-9, Ex. I, Whittaker PDC Summary).

Prior to addressing Condron's leave and supplemental employment issues, Condron handed Whittaker a type-written notice of resignation.

5

(SOF ¶ 34). Condron's note states that she is resigning "due to the ongoing harassment and other conflict . . . with the department." (Id.; Condron Dep., Ex. 6, letter of resignation).

Condron filed a complaint on December 8, 2010, (Doc. 1) and an Amended Complaint on March 8, 2011. In her Amended Complaint, Condron alleged claims under the Americans with Disabilities Act ("ADA") as well as the Civil Rights Act, 42 U.S.C. § 1983 ("section 1983"). The court dismissed Condron's ADA claims in its motion to dismiss order. The court allowed Condron's section 1983 First Amendment retaliation claims to proceed. At the conclusion of discovery, the defendants filed the instant motion for summary judgment. (Doc. 37). The parties then briefed the issues bringing the case to its present posture.

**JURISDICTION**

The court has federal question jurisdiction over this civil rights action brought under 42 U.S.C. § 1983. See 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."); 28 U.S.C. §§ 1343(a)(3), (4) (granting district courts jurisdiction over civil actions brought to redress deprivations of constitutional or statutory rights by way

of damages or equitable relief).

**LEGAL STANDARD**

Granting summary judgment is proper "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (quoting FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under

7

the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the non-moving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories showing that there is a genuine issue for trial. Id. at 324.

**DISCUSSION**

In the present case, the defendants are separated into two groups. First, Foley, Wilson and Whittaker (collectively "retaliation defendants") are sued under section 1983 for First Amendment retaliation.[1] Second, Evanchick is sued for supervisor liability pursuant to section 1983. Defendants seek summary judgment on all claims. The court will first address the substantive claims against the retaliation defendants followed

---

[1] Count II of the Amended Complaint is titled "First Amendment Retaliation, Due Process and Equal Protection Violations." (Doc. 10, Am. Compl. at 14). As discussed in the court's motion to dismiss opinion, the well-pleaded facts in Count II only address a claim for First Amendment retaliation. (See Condron, 2012 WL 263684, at *7-14). As such, the court construes Count II to only state a claim for First Amendment retaliation.

8

by Condron's supervisor liability claim against Evanchick.

Prior to addressing the substantive issues, the court notes that Condron's alleged constitutional violations prior to December 8, 2008 are barred by the statute of limitations.[2]  See Condron v. Pa. State Police, 3:10-CV-2506, 2012 WL 263684, at *7-14 (M.D. Pa. Jan. 30, 2012).  As such, the court will restrict its analysis to alleged constitutional violations occurring after December 8, 2008.

**A. Retaliation Defendants**

Condron brings her First Amendment claims against the retaliation defendants pursuant to section 1983.  Section 1983 does not, by its own terms, create substantive rights.  Rather, it provides remedies for deprivations of rights established elsewhere in the Constitution or federal law.  Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Section 1983 states in pertinent part:

---

[2] Courts apply analogous state law limitations periods to section 1983 claims "if it is not inconsistent with federal law or policy to do so." Wilson v. Garcia, 471 U.S. 261, 267 (1985).  Pennsylvania law requires that the plaintiff commence her action within two years of her injury.  See 42 PA. CONS. STAT. ANN. § 5524(7) (establishing a two year statute of limitations for "[a]ny other action or proceeding to recover damages for injury to person or property which is founded on negligent, intentional, or otherwise tortious conduct . . . .").

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, to establish a claim under section 1983, two criteria must be met. First, the conduct complained of must have been committed by a person acting under color of state law. Sameric Corp. of Del., Inc. v. City of Phila., 142 F.3d 582, 590 (3d Cir. 1998). Second, the conduct must deprive the plaintiff of rights secured under the Constitution or federal law. Id. Here, the parties do not dispute the defendants were acting under color of state law. Rather, the parties disagree as to whether the defendants deprived Condron of her First Amendment rights.

Condron's retaliation claims are grounded in the First Amendment's Free Speech and Petition Clauses. First we will discuss Condron's right to free speech as a public employee. The law provides that "[w]hen a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). The United States Supreme Court has explained that "public employees do not surrender all their First Amendment rights by

10

reason of their employment.  Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." Id. at 417.

A public employee's speech is protected under the First Amendment's Speech Clause when the speech pertains to "a matter of public concern, and the employee's interest in expression . . . [is] not outweighed by any injury the speech could cause to the interest of the state as an employer in promoting the efficiency of the public services it performs through its employees." Watters v. City of Phila., 55 F.3d 886, 892 (3d Cir. 1995).  Public employee speech is considered to be on a matter of public concern "if it can be fairly considered as relating to any matter of political, social, or other concern to the community.  This determination turns on the content, form and context of the public employee's speech." Green v. Phila. Hous. Auth.,105 F.3d 882, 886 (3d Cir. 1997) (internal quotation marks and citations omitted).

Similar to the First Amendment's Speech Clause, the First Amendment's Petition Clause "protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes." Borough of Duryea, Pa. v. Guarnieri, 131 S.Ct. 2488,

2494 (2011) (citations omitted). As stated under the Speech Clause, "whether an employee's petition relates to a matter of public concern will depend on 'the content, form, and context of [the petition], as revealed by the whole record.'" Id. at 2501 (quoting Connick, 461 U.S. at 147-48). Thus, to determine whether plaintiff's petition is on a matter of public concern, the court must know its content, form and context.

The Petition Clause, however, "is not a right to transform everyday employment disputes into matters for constitutional litigation in federal courts." Id. A public employee's internal complaint is not protected by the First Amendment where there is no evidence in the record that the employee made a public statement nor sought to advance a political or social point of view beyond the employment context. Id.; Gorum v. Sessoms, 561 F.3d 179, 187 (3d Cir. 2009). Additionally, a retaliation claim based on a employer's request that it award him additional compensation or benefits during the course of his employment does not involve a matter of public concern. Connick, 461 U.S. at 147. Moreover, a retaliation claim involving nothing more than a change in an employee's own duties does not relate to a matter of public concern. Duryea, 131 S. Ct. at 2500.

In the present case, the public concern test is applicable to Condron's October 2006 and October 2009 grievances.[3] Condron's October 2006 grievance pertains to her accommodated work schedule and involuntary leave. (Doc. 45-7, Ex. G, Decl. of Condron ¶¶ 10-11). Condron's October 2009 grievance relates to her sick and holiday leave usage. (Id. ¶¶ 15-16). As such, the court must determine whether the content, form and context of these grievances relate to matters of public concern.

The court finds that these grievances do not relate to matters of public concern for three reasons. First, Condron's grievances concern nothing more than the terms and conditions of her employment and individualized workplace grievances do not relate to matters of public concern. See Duryea, 131 S. Ct. at 2501. Second, Condron's grievances were not communicated to the public, nor is there any indication that Condron intended them to be made public. Id. Rather, Condron's grievances were filed pursuant to the normal procedure for handling

---

[3] While the court notes that Condron's alleged constitutional violations prior to December 8, 2008 are barred by the statute of limitations, the court considers Condron's 2006 grievance to the extent that issues pertaining to compensation for Condron's involuntary leave time were still in dispute when Condron returned to work in January 2009.

13

internal employment disputes. Third, Condron was acting pursuant to her official duties when she filed her grievances and not acting as a private citizen. See Edwards, 372 U.S. at 235-38.

Condron argues that the content of her grievances address issues of public concern because she is diabetic. As a diabetic, Condron has a constitutional duty to speak out on behalf of all diabetics working in law enforcement. Condron's grievances, however, fall squarely within the Supreme Court's holding that a public employee's right to participate in the democratic process "is not a right to transform everyday employment disputes into matters for constitutional litigation in federal courts." Id.; see also United States v. Nat'l Treasury Emp.'s Union, 513 U.S. 454, 466 (1995) (holding that a speech that "involves nothing more than a complaint about a change in the employee's own duties" does not concern a matter of public concern). Accordingly, viewing the facts in the light most favorable to Condron, the court finds that the retaliation defendants are entitled to judgment as a matter of law on Condron's First Amendment claims.

**B. Evanchick**

Condron seeks to hold Evanchick liable for supervisory liability under

section 1983.  To set forth a section 1983 supervisory liability claim, a plaintiff "must demonstrate that the supervising official: (1) personally participated in violating a person's rights; (2) directed others to violate a person's rights; or (3) had knowledge of and acquiesced in a subordinate's violation of a person's rights."  Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 (3d Cir. 1997), *abrogated on other grounds by* Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 76-78 (2006).  Because the court found that Condron's First Amendment rights were not violated, Condron's supervisor liability claim fails as a matter of law.  Ergo, the court finds that Evanchick is entitled to judgment as a mater of law on Condron's supervisor liability claim.

**CONCLUSION**

For the reasons stated above, defendants' motion for summary judgment will be granted.  An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARY ELLEN CONDRON, | : | No. 3:10cv2506 |
| Plaintiff | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| CAPTAIN ROBERT EVANCHICK, | : | |
| MAXINE JOHNSON, LIEUTENANT | : | |
| WHITTAKER, JOSEPH FOLEY, and | : | |
| AMBER WILSON, | : | |
| Defendants | : | |

## ORDER

**AND NOW**, to wit, this 27th day of August 2013, defendants' motion for summary judgment (Doc. 37) is **GRANTED**. The Clerk of Court is directed to enter judgment in favor of the defendants and to close this case.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court